JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LAUREL EDELMAN

**DEFENDANTS**
SOURCE HEALTHCARE ANALYTICS, LLC and
CONNIE SHAFFER

**(b)** County of Residence of First Listed Plaintiff    Chester County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Montgomery County, PA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
RILEY RIPER HOLLIN & COLAGRECO
P.O. Box 1265
717 Constitution Drive
Exton, PA 19341
610-458-4400

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
    Plaintiff

☒ 3  Federal Question
    *(U.S. Government Not a Party)*

☐ 2  U.S. Government
    Defendant

☐ 4  Diversity
    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                                *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |    Product Liability | |    28 USC 157 |    3729(a)) |
| ☐ 140 Negotiable Instrument |    Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |    Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|    & Enforcement of Judgment |    Slander |    Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |    Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
|    Student Loans | ☐ 340 Marine |    Injury Product | | | ☐ 470 Racketeer Influenced and |
|    (Excludes Veterans) | ☐ 345 Marine Product |    Liability | **LABOR** | **SOCIAL SECURITY** |    Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |    Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
|    of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |    Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract |    Product Liability | ☐ 380 Other Personal |    Relations | ☐ 864 SSID Title XVI |    Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |    Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |    Injury | ☐ 385 Property Damage | ☒ 751 Family and Medical | | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - |    Product Liability |    Leave Act | | ☐ 893 Environmental Matters |
| |    Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** |    Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |    Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | |    or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party |    Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |    Sentence | |    26 USC 7609 |    Agency Decision |
| ☐ 245 Tort Product Liability |    Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | |    State Statutes |
| |    Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |    Other | ☐ 550 Civil Rights |    Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | |    Conditions of | | | |
| | |    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
    Proceeding

☐ 2  Removed from
    State Court

☐ 3  Remanded from
    Appellate Court

☐ 4  Reinstated or
    Reopened

☐ 5  Transferred from
    Another District
    *(specify)*

☐ 6  Multidistrict
    Litigation -
    Transfer

☐ 8  Multidistrict
    Litigation -
    Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Family and Medical Leave Act, 29 USC 2601, et seq
Brief description of cause:
Defendants violated the FMLA and WPCA

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
12/02/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

LAUREL EDELMAN                          :          CIVIL ACTION
                                        :
                    v.                  :
SOURCE HEALTHCARE ANALYTICS LLC         :
and CONNIE SHAFFER                      :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.           (X)


12/02/2016              George B. Randolph, Esquire
_____         David L. Black, Esquire        _____Plaintiff_____
**Date**                **Attorney-at-law**            **Attorney for**

610-458-4400            610-458-4441                   George@rrhc.com; DavidB@rrhc.com
_____         _____                _____
**Telephone**           **FAX Number**                 **E-Mail Address**


(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **1591 White Chimney Rd., West Chester, PA  19380**

Address of Defendant: **1001 E. Hector St., Conshohocken PA and 2390 E. Camelback Rd, Phoenix AZ 85016**

Place of Accident, Incident or Transaction: **Horsham, PA, Conshohocken, PA**
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☐  No☒

Does this case involve multidistrict litigation possibilities?          Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____**n/a**_____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐  No☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) **FMLA**

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, **George B. Randolph**_____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: **12/2/16**          _____          **39278**
                          Attorney-at-Law          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____          _____          _____
                          Attorney-at-Law          Attorney I.D.#

CIV. 609 (5/2012)

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

EASTERN DISTRICT OF PENNS⌄

|  |  |
|---|---|
| LAUREL EDELMAN | ) |
|  | ) |
|  | ) |
|  | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
|  | ) |
| SOURCE HEALTHCARE ANALYTICS, LLC and | ) |
| CONNIE SHAFFER | ) |
|  | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    Source Healthcare Analytics, LLC
1001 E. Hector St., Suite 220
Conshohocken, PA  19428

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    George B. Randolph, Esquire
RILEY RIPER HOLLIN & COLAGRECO
717 Constitution Drive, Suite 201
P.O. Box 1265
Exton, PA  19341

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ __0.00__ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

EASTERN DISTRICT OF PENNSY▼

|  |  |  |
|---|---|---|
| LAUREL EDELMAN | ) ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiff(s)* | | Civil Action No. |
| v. | | |
| SOURCE HEALTHCARE ANALYTICS, LLC and CONNIE SHAFFER | | |
| *Defendant(s)* | | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Connie Shaffer
2390 E. Camelback Road, Suite 300
Phoenix, AZ  85016

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   George B. Randolph, Esquire
RILEY RIPER HOLLIN & COLAGRECO
717 Constitution Drive, Suite 201
P.O. Box 1265
Exton, PA  19341

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____
                                                                   *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

□ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAUREL EDELMAN** | : | |
| 1591 White Chimney Road | : | CIVIL ACTION |
| West Chester, PA 19380, | : | |
| Plaintiff, | : | |
| | : | NO._____ |
| v. | : | |
| | : | |
| **SOURCE HEALTHCARE ANALYTICS, LLC** | : | |
| 1001 East Hector Street, Suite 220 | : | **JURY TRIAL DEMANDED** |
| Conshohocken, PA 19428, | : | |
| | : | |
| and | : | |
| | : | |
| **CONNIE SHAFFER** | : | |
| 2390 E. Camelback Road, Suite 300 | : | |
| Phoenix, AZ 85016, | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Laurel Edelman ("**Edelman**"), by and through her undersigned attorneys, hereby files this Complaint against Defendants Source Healthcare Analytics, LLC d/b/a Symphony Health Solutions ("**SHA**") and Connie Shaffer ("**Shaffer**") as follows:

## INTRODUCTION

1.      Plaintiff Edelman brings this action as a result of Defendants' unlawful interference with, and retaliation against, Edelman's exercise of rights under the Family and Medical Leave Act ("**FMLA**"), 29 U.S.C. §2601, *et seq.* as well as for Defendants' refusal to tender to Edelman upon Edelman's termination from employment with Defendant SHA all "wages" due under Pennsylvania's Wage Payment and Collection Law, 43 P.S. 260.1 *et seq.*

2.      Plaintiff Edelman is an adult individual with an address as stated above.

3.      Defendant SHA is a Delaware limited liability company maintaining its principal place of business at the address as stated above.

4.      Defendant Shaffer is an adult individual and the Senior Director of SHA's Human Resources Department with an address as stated above.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as Plaintiff Edelman's claims arise under a law of the United States.  This Court has supplemental jurisdiction over Plaintiff Edelman's state law claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial portion of the events and/or omissions giving rise to Plaintiff Edelman's claims arose in this judicial district.

## FACTS

7.      From December 2014 through February 11, 2016, Plaintiff Edelman was employed full time with SHA as a "National Account Director".  A copy of her December 8, 2014 offer of employment, as a National Account Director, and her December 9, 2014 acceptance, is attached hereto at Exhibit "A".  She was thereafter provided an employee handbook which noted, inter alia, that FMLA "leave may be paid, unpaid, or a combination of PTO, STD [Short Term Disability Leave] and/or unpaid leave, depending on the circumstances…"  A copy of the relevant page of the SHA Employee Handbook page is attached hereto at Exhibit "B".  As such, she was employed by the Defendant, her employer, for at least 12 months, and had in excess of 1250 hours of service to her employer in the 12-month period preceding the termination of her employment (and this requirement is satisfied even before the language in the Employer's employee handbook[1] is considered, which arguably modified existing FMLA requirements).

---

[1] The SHA Employee Handbook noted and assured employees that "upon return from FMLA leave… the FMLA requires that the employee return the employee to the same job, or one that is nearly identical (equivalent)".  See p. 24 of Employee Handbook, at Exhibit "A".

2

8.     Plaintiff Edelman worked for SHA out of her home office in West Chester, Pennsylvania and reported to executives at SHA's then-offices in Horsham, Pennsylvania and thereafter, Conshohocken, Pennsylvania.  SHA employed 50 or more employees within a 75 mile radius of the employee's worksite, or from which her work was assigned, or to which she reported.

9.     During her employment as a National Account Director, Plaintiff Edelman was responsible for various accounts, including federal government contracts pursuant to which SHA was required to comply with various federal laws including, without limitation, the Health Insurance Portability and Accountability Act ("**HIPAA**").

10.     In order to comply with the terms of those federal government contracts and HIPAA, SHA was required to, *inter alia*, provide certain information to the contracting federal agencies regarding the storage of the federal government's information and the employees who had access to that information.

11.     In or around late July through about August 2015, Plaintiff Edelman advised and/or expressed her concern to SHA senior executives of various issues existing at SHA that she believed were not in compliance with SHA's obligations, both under SHA's federal government contracts and under federal law.

12.     While Plaintiff Edelman was unsuccessfully attempting to advise SHA's senior management and legal advisors of her concerns that SHA was not in compliance with federal law, Plaintiff Edelman learned that she needed surgery in order to treat a serious medical condition of her own, which would require Plaintiff Edelman to miss several months of work at SHA.

3

13.     In or around mid-October 2015, Plaintiff Edelman contacted SHA's Senior Director of Human Resources, Defendant Shaffer, and informed Defendant Shaffer that Plaintiff Edelman had scheduled a double knee replacement surgery for November 9, 2015 and requested information on SHA's short term disability leave policy and well as information on SHA's policy on FMLA leave.   A representative copy of Plaintiff's emails reflecting her request is attached hereto at Exhibit "C".   A representative sample of emails from Defendant Connie Shaffer, SHA's Senior Director of Human Resources, confirmed that leave time over 5 days was handled through short term disability and FMLA, again which confirmed the employee handbook's content that FMLA leave could include short term disability and even before Plaintiff had 12 months of employment.   See e.g. Exhibit "C".

14.     Re-enforcing the representation that Plaintiff was already eligible for FMLA leave and Plaintiff's belief that she was already entitled to FMLA leave because Defendants Shaffer and SHA requested that Plaintiff Edelman complete and return short term disability leave and FMLA forms, which FMLA forms Plaintiff Edelman and her physician completed and returned to SHA and/or Shaffer.   On information and belief, SHA thereafter requested Plaintiff to avail herself of short-term disability in order to apparently later "sandbag" Plaintiff regarding Plaintiff's amount of FMLA leave.   In fact, SHA approved and permitted the issuance of Short Term Disability benefits as part of her FMLA leave, which SHA's employee handbook noted could be comprised of, inter alia, Short Term Disability.   A copy of certain correspondence reflecting the issuance of Short Term Disability Benefits to Plaintiffs as part of FMLA leave to Plaintiff is attached hereto at Exhibit "D".

15.     Plaintiff Edelman underwent the scheduled knee replacement surgery on November 9, 2015 and SHA placed Plaintiff Edelman on FMLA leave as of November 9, 2015,

and SHA advised Plaintiff Edelman that it was placing her on FMLA leave for a period of 12 weeks.

16.     Even if Plaintiff Edelman did not meet the eligibility requirements under the FMLA as of November 9, 2015, Defendants are equitably estopped from denying Plaintiff Edelman's eligibility for FMLA leave.

17.     As of December 14, 2015, then, Plaintiff Edelman had been an employee of SHA for one year, had worked in excess of 1250 hours, and was entitled to the protection of the FMLA.  See, e.g., Hearst v. Progressive Foam Technologies, Inc., 682 F Supp. 2d 955 (E.D. Ark 2010) (employee became an eligible employee under FMLA on his one year anniversary even though he was on leave).

18.     On or about January 5, 2016 (well before the expiration of the 12 weeks of FMLA leave previously accorded to her), Plaintiff Edelman via email contacted her immediate supervisor, Shaffer, and SHA's human resources executive and informed SHA that Plaintiff Edelman could return to work as of that date  (well before the expiration of the 12 weeks of FMLA leave that was previously made available to Plaintiff), provided that SHA could provide a reasonable accommodation to limit her long distance or plane travel until February 15, 2016. Plaintiff provided a doctor's note to support her early return from FMLA leave and back to work at SHA, as well as the limited restriction on her ability to do long distance or plane travel for several more weeks of time.  Plaintiff was able to perform the essential functions of her job not only at the end of her FMLA leave, but even before the end of her then-scheduled FMLA leave. A copy of a doctor's note provided to SHA in about early January 2016 is attached hereto at Exhibit "E".  In fact, and over this time period, SHA began contacting Plaintiff Edelman with various work-related requests even before she returned from her FMLA leave, which she

5

thereafter performed.   Plaintiff requested in about early January 2016 to return from FMLA leave.

19.     After receiving no substantive reply from SHA to her request to return to work early from her FMLA leave, Plaintiff Edelman began mailing SHA by about January 21, 2016 to return to work.   She got the runaround and non-responses.   Therefore, on January 29, 2016, Plaintiff Edelman again contacted SHA via email on January 29, 2016 to inquire about returning to work again in a role beginning on February 1, 2016 with minimal restrictions on her ability to travel for two weeks.   Copies of some of the email requests from Plaintiff Edelman to SHA requesting to return to work early, and SHA's failure to respond to her requests, are attached hereto at Exhibit "F".

20.     On information and belief, Defendants failed and refused and/or delayed in responding to Plaintiff's requests to return from FMLA leave early, in order to later "run out the clock" on the 12 weeks of FMLA leave provided by law to Plaintiff, and then be able to later disingenuously claim that Plaintiff had "exceeded" her 12 weeks of FMLA leave.

21.     Despite Plaintiff Edelman's repeated requests to return to work early from FMLA leave, Defendants intentionally ignored those requests and intentionally avoided responding to Plaintiff to allow Plaintiff to return to work.   Instead, Defendants advised and directed Plaintiff to take more time off and return to work on February 11, 2016.

22.     Plaintiff abided by Defendant's representations and instructions, and returned to work on the morning of February 11, 2016.   Upon her return to work on the morning of February 11, 2016, Defendants immediately notified Plaintiff Edelman that her employment with SHA was terminated, effective that same day of February 11, 2016.   The temporal proximity between Plaintiff's taking FMLA leave, her request to come back early from FMLA leave, and her

609171.1

immediate termination upon her return is unusually suggestive of discriminatory and retaliatory animus by SHA.  Such unusually suggestive temporal proximity is sufficient to establish a causal connection for purposes of a claim of interference, and/or of retaliatory discharge, under the FMLA.  Defendants failed to restore the Plaintiff to the position that she had held when the leave began, or to an equivalent position with equivalent benefits, pay and terms and conditions of employment despite the handbook, and despite the law.

23.     SHA and Shaffer orally informed Plaintiff Edelman that there was no FMLA violation because Edelman had exceeded her 12 weeks of FMLA leave by staying out until February 10, 2016 (even though SHA had instructed her to take more time and FMLA leave off then she had requested) and, in any event, because her job as a "National Account Director" was "eliminated" by SHA because SHA was reducing its workforce and had eliminated her position because it was getting out of the government business she had been involved with.  This representation and stated reason provided by SHA to Plaintiff was not correct or true, and was pretextual in nature.  On information and belief, the pretextual rationales were conveyed orally to Plaintiff Edelman by SHA in order to avoid its leaving a paper trail that would document its misrepresentations to her.

24.     However, at the same time SHA terminated Plaintiff Edelman's employment and, supposedly, her position, effective immediately, as a "National Account Director", SHA was actively and simultaneously recruiting prospective candidates to fill a "National Account Director" position, i.e. the same position from which SHA had terminated Plaintiff Edelman due to an alleged reduction in workforce, and the supposed "elimination" of her position at SHA and the concomitant work because SHA was getting out of the government contracting business.  See SHA's job postings for that National Account Director for February 2016 attached hereto at

7

Exhibit "G". These misrepresentations are unusually suggestive of discriminatory and retaliatory animus toward Plaintiff Edelman regarding her rights under the FMLA.

25.     Besides its interference and retaliation against Plaintiff Edelman in the exercise of her FMLA rights, on information and belief, SHA had, as one unstated reason for her termination, the termination of an employee (here, Edelman) who had raised concerns about SHA's ability to comply with the HIPAA requirements of SHA's contracts that she was obtaining for SHA. On further information and belief, SHA also thereafter terminated its manager of HIPAA compliance because that individual had also raised concerns to SHA that SHA was not compliant with its obligations, under HIPAA and its federal contracts, to ensure HIPAA confidentiality.

26.     Moreover, SHA's representation to Edelman in mid-February 2016 that her job was "eliminated" because SHA was getting out of the government business was and is later contradicted by SHA's subsequent request to the federal government for a new DUNS contact number on the federal government's SAM system from that of Edelman to another Symphony employee, thus again demonstrating that Symphony was not getting out of the business of seeking federal government contracts. (The form DUNS number was 621288682, while the later, newer, DUNS number is 0324505489 – both of which are publicly-available information).

27.     In addition, Edelman had received numerous compliments from her superiors regarding her success in attaining certain business for SHA. A representative sample is attached hereto at Exhibit "H". Edelman had received no indications from her superiors that her job was going to be eliminated, or that her work performance was deficient or that SHA was getting out of the government business. Indeed, she was scheduled to receive certain bonuses and/or commissions from SHA for her success upon her return to work at SHA.

8

28.     In addition, at the time of her termination from employment with SHA, SHA owed to Plaintiff Edelman various work-related business expense reimbursements, and part of a bonus, which Defendants have failed and refused to pay to Plaintiff Edelman unless and until Plaintiff Edelman executes a "Separation and Release Agreement" that Defendants provided to Plaintiff Edelman whereby Defendants have requested Plaintiff Edelman to waive all of her employment-related claims – including claims regarding which SHA clearly and already owed Plaintiff Edelman monies for her business expense reimbursements. SHA's requested "Separation and Release Agreement" also required Plaintiff to waive her prospective rights under the FMLA, in violation of U.S. Department of Labor regulations. SHA's (and Shaffer's) stated "rationale" for its refusal to reimburse and/or pay Edelman for those business expenses that Plaintiff had incurred was:

a.   that Edelman had not properly inputted her business expenses into its computerized system – even though SHA had implemented a new computerized reporting system while Edelman had been out on leave but SHA had failed to instruct Edelman in the use of that new system while she had been out on leave.

b.   that Edelman had not timely inputted certain of her business expenses, even though SHA had often permitted other employees to enter their business expenses late, and pay them.

29.     The Pennsylvania Wage Payment and Collection Act also makes it unlawful for an Employer (here, SHA) and any officer (i.e., Defendant Shaffer) who plays an active role in failing and refusing to pay an ex-employee any accrued and owing wages or benefits, from refusing to pay those wages, or to pre-conditioning the payment with a release for those very same wages or benefits or expense reimbursements already owed to the ex-employee.

30.     Defendants' actions, as set forth herein, also constitute both an interference with and an unlawful retaliation under the FMLA.

9

## COUNT I-VIOLATION OF THE FMLA
### (Interference, Against Both Defendants)

31.     All paragraphs above are hereby incorporated by reference.

32.     Plaintiff Edelman was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. §2611(2)(a)(i)(ii), et seq. and the case law regarding the FMLA.

33.     Alternatively, Defendants are equitably estopped based on their conduct as set forth herein from denying Plaintiff Edelman's eligibility for leave under the FMLA.

34.     Plaintiff Edelman requested and obtained leave from Defendant SHA, her employer, with whom she had been employed for at least twelve (12) months pursuant to the requirements of 29 U.S.C.A. §2611(a)(i) and pursuant to SHA's own employee handbook and the representations of its Senior Human Resources Representative, Defendant Shaffer. Alternatively, Plaintiff Edelman became an eligible employee in December 2015 and was afforded FMLA leave from December 2015 until February 10, 2016. *See e.g. Hearst v. Progressive Foam Techs., Inc.*, 682 F. Supp. 2d 955, 960 (E.D. Ark. 2010), aff'd, 641 F.3d 276 (8th Cir. 2011)

35.     Plaintiff Edelman had at least 1,250 hours of service with Defendants before she used leave but was terminated.

36.     Defendant SHA is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar weeks in the current or preceding calendar year, pursuant to 29 U.S.C.A. §2611(4)(A)(i).

37.     Plaintiff was entitled to receive FMLA leave pursuant to 29 U.S.C.A. §2612(a)(1) for a total of up to twelve (12) work weeks of leave because she suffered from qualifying physical health problems.

38.     Defendants unlawfully interfered with Plaintiff Edelman's rights under the FMLA by, *inter alia*, falsely advising her that FMLA leave could consist of a "combination of PTO, STD and/or unpaid leave", by failing to respond to Plaintiff Edelman's inquiries, by deliberately telling her to stay out on leave past the 12 weeks of FMLA leave, by asserting various pretexts and misrepresentations to her, and by ultimately discouraging and then refusing to reinstate Plaintiff Edelman's employment earlier, i.e. the date that Plaintiff Edelman requested to return to work.  On information and belief, the Defendants advised and directed Plaintiff to continue her FMLA leave past the 12-weeks normally provided by law so that Defendants could thereafter contend that Plaintiff supposedly "lost" her protection under the FMLA.  Plaintiff was denied a substantive benefit under the FMLA, such as prompt restoration of her work after leave.  Put differently, an employer may not interfere with an employee's right to FMLA leave by forcing that employee to take leave that he or she did not request or need.  An involuntary leave claim requires an employee to have been forced to take FMLA leave even though the employee does not have a "serious health condition" that precludes her from working.  Here, Edelman was an eligible employee by no later than December 2015, her doctor indicated by early January 2016 that she was able to return to work at SHA with only limited restrictions, yet SHA repeatedly ignored her requests to return to work in January, and requested that she extend her leave to February 11, 2016, and then terminated her on her first day back to work by then contending that she had exceeded 12 weeks of leave, and falsely representing that her job had been eliminated because she was getting out of the government contractor business.

39.     Defendant Shaffer is personally liable because Defendant Shaffer is a high-level manager who exerted control over Plaintiff's specific leave, over Defendant SHA's family medical leave policies, and personally terminated Plaintiff Edelman in violation of the FMLA.

11

**WHEREFORE,** Plaintiff Laurel Edelman demands judgment in her favor and against Defendants as follows:

   A.      Reinstatement to her prior position;

   B.      compensatory damages, lost wages and benefits, and other actual monetary losses, in an amount exceeding $75,000.00;

   C.      liquidated damages in an amount equal to any monetary recovery, as permitted by applicable law, to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants and other employers from engaging in such misconduct in the future;

   D.      costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law; and

   E.      such other relief as this Court deems just and appropriate.

### COUNT II- VIOLATION OF THE FMLA
### (Retaliation, Against All Defendants)

40.   All paragraphs above are hereby incorporated by reference.

41.   As set forth above, Plaintiff Edelman exercised her rights under the FMLA.

42.   Defendants unlawfully retaliated against Plaintiff Edelman for exercising her rights under the FMLA by, *inter alia*, immediately terminating Plaintiff Edelman's employment on February 11, 2016, the very first day she was told by Defendants to return to work at SHA. Defendants compounded their unlawful retaliation against Plaintiff by terminating her on the pretext that she had exceeded 12 weeks of FMLA leave, and by further representing that her job as "National Account Director" was eliminated even as SHA was simultaneously advertising for

12

another candidate to perform the very same job duties as a "National Account Director" as that of Plaintiff. Her termination was a materially adverse employment action.

43.     Defendant Shaffer is personally liable because Defendant Shaffer is a high-level manager who exerted control over Plaintiff's specific leave, over Defendant SHA's medical and FMLA leave policies, and personally terminated Plaintiff Edelman in violation of the FMLA.

**WHEREFORE,** Plaintiff Laurel Edelman demands judgment in her favor and against Defendants as follows:

A.     Reinstatement to her prior position;

B.     compensatory damages, lost wages and benefits, and other actual monetary losses, in an amount exceeding $75,000.00;

C.     liquidated damages in an amount equal to any monetary recovery, as permitted by applicable law, to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants and other employers from engaging in such misconduct in the future;

D.     costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law; and

E.     such other relief as this Court deems just and appropriate.

### COUNT III- BREACH OF CONTRACT/VIOLATION OF W.P.C.L.
**(Against All Defendants)**

44.     All paragraphs above are hereby incorporated by reference.

45.     At all times material hereto, SHA was Plaintiff Edelman's "employer" within the meaning of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1 *et seq.* (the "**WPCL**").

46.     At all times material hereto, Plaintiff Edelman was an "employee" of Defendant SHA under the WPCL.

47.     The expense reimbursements and bonus monies described herein which are due and owing to Plaintiff Edelman are "wages" within the meaning of the WPCL.

48.     Defendant Shaffer is also an "employer" of Plaintiff Edelman under the WPCL as she was a high ranking officer who actively participated in the decision-making of Defendant SHA, including the decision to refuse the payment of wages and expense reimbursements due and owing to Plaintiff Edelman as described herein.

49.     To date, Defendant SHA, and also by and through Defendant Shaffer, have failed and refused to pay to Plaintiff Edelman the wages and expense reimbursements and bonus monies to which Plaintiff Edelman was entitled pursuant to her employment with Defendant SHA.

50.     Defendants' refusal to pay Plaintiff Edelman is without justification and in bad faith, thereby entitling Plaintiff Edelman to liquidated damages in the amount of twenty five (25%) percent of the total due and owing to Plaintiff Edelman.

51.     As a direct and proximate result of Defendants' violation of the WPCL, Plaintiff Edelman is entitled to all unpaid wages and benefits, liquidated damages, interest, and costs of prosecuting this action, including her attorneys' fees.

**WHEREFORE**, Plaintiff Laurel Edelman demands judgment in her favor and against Defendants for all unpaid wages and expense reimbursements owed, to be calculated following the conclusion of discovery, plus liquidated damages, interest, costs, attorneys' fees, and such further relief as this Court deems just and appropriate.

Respectfully submitted,

**RILEY RIPER HOLLIN & COLAGRECO**

By: _____

GEORGE B. RANDOLPH, ESQUIRE
DAVID L. BLACK, ESQUIRE
Pa. I.D. Nos. 39278, 93173
717 Constitution Drive, Suite 201
Exton, PA 19341
(610) 458-4400 (t)
(610) 458-4441 (f)
george@rrhc.com
davidb@rrhc.com
Attorneys for Plaintiff

**Dated**: December 2, 2016

15

**EXHIBIT "A"**



December 8, 2014

Laurel Edelman
1591 White Chimney Rd
West Chester, PA 19380

Dear Laurel,

Your contributions over the past nine months as a consultant have contributed to our development of the government channel. We would like to offer you the opportunity to join us as a full time employee effective December 15th, 2014 as a National Account Director.

In the National Account Director position, you will be paid a base salary of $150,000 per year ("Base Compensation"). In this role you will report to Robert Boyce, Vice President, Strategic Partnerships and will work out of Symphony's Horsham office. Base Compensation will paid in accordance with our standard payroll practices, which currently provide for semi-monthly payments on the 15th and last day of each month. Deductions will be made from your Base Compensation in accordance with laws and your personal benefit choices. For payroll purposes you will be paid by Source Healthcare Analytics, which is part of Symphony Health Solutions.

In addition, you will participate in the 2015 National Account Director commission plan. Specific goals, objectives and quotas will be finalized by management and provided shortly after your start date. These will be based upon your assigned territory and potentially pro-rated based upon your start date with the company.

As a part of the Symphony Health Solutions Team you will have several benefit options from which to choose. Medical, dental, life, and vision insurance, along with other benefit plan options are listed on the attached "Employee Benefits Summary". All benefits are subject to the terms and conditions of individual plans (such as possible waiting periods). Some of these benefits are paid by Symphony Health Solutions and some require employee contributions.

Notwithstanding this offer letter and any other employment-related agreements, your employment with Symphony Health Solutions is on an "at-will" basis. Meaning that either you, or Symphony Health Solutions, can terminate this employment relationship at any time and for any reason or no reason at all. By your acknowledgement of this employment offer, you agree that your employment relationship is with Source Healthcare Analytics and that at some point in the future your payroll may be transferred to Symphony Health Solutions Corporation ("Parent Company").

If you have any questions or comments, please feel free to reach out.



Sincerely,

Jeff Cottle
Sr VP and Chief People Officer
Symphony Health Solutions

Cc: J. Craig Davis, Recruiting Manager

*Connect* with Symphony!  *Collaborate* with Customers!  *Challenge* Yourself!

Welcome to Symphony Health!  We are thrilled you have chosen to be part of our team!

This offer is contingent upon your execution of this letter and the attached Symphony Employee non-disclosure Agreement (NDA) on or before 12/10/2014.

Please sign this letter and return via scan/e-mail or fax: 602-381-9121.

I, _____acknowledge and agree with this employment offer, terms and conditions.


Signature: _____          Date: _____

**From:** Boyce, Robert
**Sent:** Friday, December 12, 2014 4:38 PM
**To:** Edelman, Laurel
**Subject:** FW: Offer and NDA Acceptance

Fyi
Also, I am not going to make it tonight.

**From:** Davis, Craig
**Sent:** Friday, December 12, 2014 4:37 PM
**To:** Boyce, Robert; Cottle, Jeff
**Subject:** RE: Offer and NDA Acceptance

Thanks again Rob. We'll get her set up with payroll and reach out for onboarding. Have a good weekend!

**From:** Boyce, Robert
**Sent:** Friday, December 12, 2014 2:35 PM
**To:** Davis, Craig; Cottle, Jeff
**Subject:** FW: Offer and NDA Acceptance
**Importance:** High

**From:** Edelman, Laurel
**Sent:** Tuesday, December 09, 2014 5:24 PM
**To:** Boyce, Robert
**Subject:** Offer and NDA Acceptance
**Importance:** High

Dear Rob,

I am writing to confirm my acceptance of your offer of December 9, 2014, the National Account Director position. I am excited to be joining Symphony Health Solutions as a full time employee, and I am confident that I will continue to make a significant contribution to the growth of our organization.

As we discussed, the start date for the position will begin on December 15, 2014 and I will invoice my final invoice for the consulting position on December 14, 2014.

Rob, I appreciate your confidence in me, and am excited to continue working with you, the Strategic Partnerships Team and the many folks at Symphony Health Solutions.

Sincerely,

Laurel

Laurel Edelman
Consultant, Government Services, Strategic Partnerships
484-653-8707
Laurel.Edelman@symphonyhealth.com

# EXHIBIT "B"

DocuSign Envelope ID: 77566C7B-F2BC-4B28-917E-97C7B8F141E3



**Employee Handbook**

Differentiate.

DocuSign Envelope ID: 77566C7B-F2BC-4B28-917E-97C7B8F141E3

## LEAVE OF ABSENCE

### FAMILY MEDICAL LEAVE ACT

Symphony Health Solutions grants up to 12 weeks of family and medical leave during any 12-month period to eligible employees, in accordance with the Family and Medical Leave Act of 1993 (FMLA) and up to 26 weeks of leave in any 12-month period in compliance with the expansion of FMLA under The Support for Injured Service members Act of 2007. The leave may be paid, unpaid or a combination of PTO, STD and/or unpaid leave, depending on the circumstances of the leave and as specified in this policy.

Upon return from FMLA leave (whether after a block of leave or an instance of intermittent leave), the FMLA requires that the employer return the employee to the same job, or one that is nearly identical (equivalent).

### PERSONAL LEAVE OF ABSENCE

All full-time employees working 30 hours or more a week may request unpaid personal leave of absence up to a maximum of 30 days to take care of personal issues not covered under disability or FMLA. In such instances, an employee must seek approval of their manager and HR and must give his/her supervisor as much notice as possible to make arrangements to reassign the workload. A personal leave of absence is unpaid, however, an employee may use any accrued unused PTO available. An employee's position is not guaranteed upon return from a Personal Leave of Absence.

### MILITARY LEAVE

Unpaid military leave of absence will be granted to employees, except those occupying temporary positions, to attend scheduled drills or training or if called to active duty with the U.S. armed services, in accordance with applicable federal, state and local laws.

Symphony Health Solutions
Employee Handbook
Version 3 – May 2014
Confidential

**EXHIBIT "C"**



Laurel Edelman <laurel.edelman@gmail.com>

**FW: Edelman surgery**

**Laurel** <laurel.edelman@gmail.com>
To: laurel.edelman@gmail.com

Mon, Feb 15, 2016 at 1:56 PM

**From:** Edelman, Laurel
**Sent:** Tuesday, October 13, 2015 10:11 AM
**To:** Green, Stuart
**Subject:** Edelman surgery

Hi Stu,

Thank you for the call this morning.  As I mentioned, it has been determined that it is time for me to get my knees replaced.  The surgery, a bilateral knee replacement (both knees) has been scheduled for November 9, 2015.  By way of this note, I am authorizing and would appreciate you discussing work options with Jeff Cottle.

Initially, I thought the recovery would be about 2 weeks however upon further discussions that time for many has been as much as 4 weeks.

Things to consider – thanksgiving week is often a quiet week, the POA meeting in December.

I'll book time for Tuesday of next week to come in for further discussion.  Thank you Stu for your assistance.

Best,

Laurel


Laurel Edelman

Sr. National Account Director, Government Services

484-653-8707

Laurel.Edelman@symphonyhealth.com

www.symphonyhealth.com

**From:** Edelman, Laurel
**Sent:** Wednesday, October 14, 2015 7:47 PM
**To:** Shaffer, Connie
**Subject:** RE: Information on FMLA/STD

Unfortunately, the money part is playing a bigger part in this than I wish, as my husband was off for the
first 6 weeks of 2015 due to his quintuple bypass and all the associated costs.  Healthy –
Yes!  Inexpensive – Definitely Not!  Connie, just talked with Met Life and they will be sending me the
forms necessary to be completed AFTER the hospitalization.  Very helpful and very clear.  Thank you
again.

Best,

Laurel

Laurel Edelman
484-653-8707
Laurel.Edelman@symphonyhealth.com

**From:** Shaffer, Connie
**Sent:** Wednesday, October 14, 2015 7:29 PM
**To:** Edelman, Laurel
**Subject:** RE: Information on FMLA/STD

Thanks.  Take care of yourself.  If I can help with anything, please let me know.



Connie Shaffer SPHR
Sr Director Human Resources
2390 E Camelback Rd., Ste 300, Phoenix, AZ 85016
602-381-9103 (office)
480-205-5001 (mobile)
602-381-9121 (Fax)
www.symphonyhealth.com
CONNECT. COLLABORATE. DIFFERENTIATE.

**Symphony**
HEALTH SOLUTIONS

**From:** Edelman, Laurel
**Sent:** Wednesday, October 14, 2015 4:28 PM
**To:** Shaffer, Connie
**Subject:** RE: Information on FMLA/STD

Hi Connie.  That will be the first day no working.  No pre- surgery relief required ☺

Best,

Laurel

Laurel Edelman
484-653-8707
Laurel.Edelman@symphonyhealth.com

**From:** Shaffer, Connie
**Sent:** Wednesday, October 14, 2015 3:32 PM
**To:** Edelman, Laurel
**Subject:** RE: Information on FMLA/STD

Laurel
You mentioned your surgery is on Nov 9th, will that be the first day no working, or will you need time prior to surgery?



*Connie Shaffer* SPHR
Sr Director Human Resources
2390 E Camelback Rd., Ste 300, Phoenix, AZ 85016
602-381-9103 (office)
480-205-5001 (mobile)
602-381-9121 (Fax)
www.symphonyhealth.com
*CONNECT. COLLABORATE. DIFFERENTIATE.*

## Symphony
HEALTH SOLUTIONS

**From:** Shaffer, Connie
**Sent:** Wednesday, October 14, 2015 7:38 AM
**To:** Edelman, Laurel
**Subject:** RE: Information on FMLA/STD

Laurel
I double checked your benefit elections and I think you might be referring to critical illness, which you elected.  Here is information to assist you with finding out more:

However, if you are paid under short term disability, they may pay you the difference between what STD pays and your normal salary. But, I would suggest you speak with them directly for the correct information.

ACCIDENT/CRITICAL ILLNESS/HOSPITAL INDEMNITY — MetLife – Group Number: 05357228
With MetLife Accident & Critical Illness, if you have any questions in regards to the coverage or you need to file a claim, you can call
the MetLife Customer Service Line:
1-800-438-6388
Monday – Friday, 8:00am – 11:00pm EST

Follow the automated process to confirm your benefit plan. Once you are connected to a live representative, they will be able to
send a claim form directly to your home. The form will have instructions of what is needed and where to send the completed form
for processing.

*Connie Shaffer* SPHR
Sr Director Human Resources
2390 E Camelback Rd., Ste 300, Phoenix, AZ 85016
602-381-9103 (office)
480-205-5001 (mobile)
602-381-9121 (Fax)
www.symphonyhealth.com
CONNECT. COLLABORATE. DIFFERENTIATE.

**Symphony**
HEALTH SOLUTIONS

**From:** Shaffer, Connie
**Sent:** Wednesday, October 14, 2015 7:26 AM
**To:** Edelman, Laurel
**Subject:** RE: Information on FMLA/STD

We do not have Afflack as an employee benefit, so you have to check with them as to how that pays you.

*Connie Shaffer* SPHR
Sr Director Human Resources
2390 E Camelback Rd., Ste 300, Phoenix, AZ 85016
602-381-9103 (office)
480-205-5001 (mobile)
602-381-9121 (Fax)
www.symphonyhealth.com
CONNECT. COLLABORATE. DIFFERENTIATE.

**Symphony**
HEALTH SOLUTIONS

**From:** Edelman, Laurel
**Sent:** Wednesday, October 14, 2015 7:22 AM
**To:** Shaffer, Connie
**Subject:** Re: Information on FMLA/STD

Hi Connie. I hope you don't mind my questions as this is all new to me. I signed onto Afflack as well - how will that work?

Best,
Laurel

Sent from my iPhone

On Oct 13, 2015, at 12:33 PM, Shaffer, Connie <Connie.Shaffer@symphonyhealth.com> wrote:

You wouldn't want to do that, since it could impact your claim.

*Connie Shaffer* SPHR
Sr Director Human Resources
2390 E Camelback Rd.; Ste 300, Phoenix, AZ 85016
602-381-9103 (office)
480-205-5001 (mobile)
602-381-9121 (Fax)
www.symphonyhealth.com
CONNECT. COLLABORATE. DIFFERENTIATE.



**From:** Edelman, Laurel
**Sent:** Tuesday, October 13, 2015 9:30 AM
**To:** Shaffer, Connie
**Subject:** RE: Information on FMLA/STD

Thanks Connie.  A quick question – if I have more PTO time available could I take 2 weeks of PTO before STD starts?  Thank you.

Best,

Laurel

Laurel Edelman
484-653-8707
Laurel.Edelman@symphonyhealth.com

**From:** Shaffer, Connie
**Sent:** Tuesday, October 13, 2015 10:43 AM
**To:** Edelman, Laurel
**Cc:** Green, Stuart; Cottle, Jeff
**Subject:** Information on FMLA/STD

Laurel,

I am sorry to hear about your upcoming surgery.  Leave time over 5 days is handled through short term disability and FMLA.  I have attached information regarding Family Medical Leave Act (FMLA) and Short